TRUAX (MERCHANTS' NAT. BANK OF HASTINGS v.). See Case No. 9,451.

TRUAX (TUTTLE v.). See Case No. 14,-277.

TRUESDALE (SUYDAM v.). See Case No. 13,656.

TRUESDELL (UNITED STATES v.). See Case No. 16,543

———

## Case No. 14,204.

### TRUESDALE v. YOUNG.

[Abb. Adm. 391.] [1]

District Court. S. D. New York. . Jan., 1849.

SEAMEN — WAGES — PILOT — CUSTOM ON HUDSON RIVER—REPRESENTATIONS BY LIBELLANT.

1. Whether, under the established usage among steamboats plying upon the Hudson river, the mere hiring of a pilot at monthly wages, effected prior to the commencement of the season of navigation, carries with it an implied engagement that the employment shall continue throughout the entire season,—query?

2. Whether such engagement could be implied where the hiring was effected after the season was partly over,—doubted.

3. Where, in the case of a contract for services in which no definite term of service is expressed, there is proof that the party claiming to have been hired as pilot represented the engagement was terminable at his option, this affords a strong presumption that it was terminable, also, at the option of the other party.

This was a libel in personam, by Verdine Truesdale against Jacob Young, to recover wages as second pilot on board the steamboat Oswego. The libel stated, that in May,

1848, the respondent, then being in command of the steamboat Oswego, engaged in towing between New York and Albany, hired libellant to serve as second pilot on the boat, at the wages of forty dollars a month and board; that by such engagement the libellant became hired for the remainder of the season,—that is, until January 1, 1849; and that he was unjustly discharged September 1, 1848. He claimed to be entitled to wages for the remainder of the season, including board, amounting to $228. The answer of respondent set up as a defence, that the employment was merely temporary, and during the consent of both parties. That libellant was a connection of his through the marriage of relatives, and was, as he had understood, destitute of employment and means of support; that libellant applied to him for temporary employment until he could find a situation; that he took libellant into the employ of the boat for so long, only, as his services should be required,—the libellant being also under no obligation to remain longer than he chose,—and that he dismissed libellant, September 1st, because he did not consider him competent to perform pilotage service in the fall months, during which the difficulty of the navigation is increased. Upon the trial, January 3, 1849, it appeared that the libellant was employed in May, 1848, and discharged September 1st, following. It also appeared that he had meanwhile made some efforts to obtain other employment, and had expressed some intention of leaving the Oswego. It did not appear that the engagement of libellant was definite as to time. But to show that it was an implied engagment until the close of the season, the libellant relied upon evidence of a usage on the Hudson river, in steamboat navigation, that pilots employed at monthly wages were understood to be employed for the entire season. The proper construction of the contract between the parties, in view of this usage, was the principal question in the case, and the chief evidence in reference to the usage was as follows: Edward L. Van Buren, testified: "I was first pilot on board the Oswego during the season of 1848. I have followed the business of pilot on the Hudson river for twenty years. The employment of a pilot on the river is usually considered to be a hiring for the season; that is the custom of steamboats upon the river. The season ends January 1st. It is the custom of the tow-boat lines to employ first officers for the entire season of ten months. I am not employed by the season." John Van Arsdale: "My business is that of pilot upon Hudson river steamboats. The custom upon the river is to hire pilots for the entire season, from March to January 1st." Henry Verplanck: "I have been first and second pilot for fifteen years. The custom of the river is to hire pilots for the season of ten months, beginning March 1st." Other witnesses gave evidence to the same purport

respecting the alleged custom. Testimony was also given, touching the services of the libellant and his competency as pilot.

Edwin Burr, for libellant.

C. Van Santvoordt, for respondent.

BETTS, District Judge. The libel in this case is based upon an alleged hiring of the libellant, as second pilot, by the respondent, master of the steamboat Oswego, for the season. The answer denies that any such agreement was made, and alleges that the libellant being out of employment, the respondent from motives of friendship, and because of marriage connection, gave him temporarily the place of second pilot on the boat, and for so long a time only as his services should be wanted.

On the first of September, the respondent informed the libellant that his services would no longer be required. The libellant two days thereafter offered to respondent to continue as second pilot during the remainder of the season, and claimed the right to the place. The respondent declined to retain him; and this suit is brought to recover wages for the months of September, October, November, and December.

There is no proof by the libellant that an express agreement was made with him for any definite term of services. There is evidence conducing to prove an established usage and course of business among the steamboats upon the Hudson river, to engage pilots and engineers at monthly wages for the season, which is considered to extend from March 1st to January 1st, and to pay them for the entire ten months, although the boats may not continue to run during the whole period. But the testimony is not explicit or clear that this mode of payment obtains in cases where it is not a part of the express bargain that the hiring is for a season. And I am not prepared, upon the evidence adduced in this case, to pronounce that a mere hiring of a pilot at monthly wages, upon the Hudson river boats, implies, by the usage and custom of the business, that his compensation shall continue throughout the entire season. This point has been before the court in a previous case. The Hudson [Case No. 6,831].

If such custom prevails in respect to engagements made previous to or at the commencement of the season, there would be stronger grounds for the court to sanction and enforce it, than would exist if the pilot or officer is taken into service after the season has in considerable part expired. The usage proved relates to employments beginning with the season; and in such case, if it falls short of a fixed custom, a stronger presumption would arise that the engagement embraced the entire season, than when the hiring is at monthly wages in the progress of the season, and after it has nearly elapsed. The pilot is then without a place, and the

opportunity to seek one from among the whole body of steamboats is no longer open to him. Moreover, it will not be implied that a general usage of that character would include and govern the chance occasions for hiring a pilot as a supernumerary, or to replace another temporarily, which the conveniences of navigation must render frequent. Whatever, then, might be the effect of taking a pilot on the Hudson river at monthly wages, without stipulation of time, prior to the first of March, I am by no means prepared to say, upon the proofs produced in this case, that such employment, at any after period of the year, will create rights or responsibilities in respect to either party, beyond an agreement for services and compensation in ordinary cases of hiring.

This case cannot, however, be justly regarded as resting upon implication or presumption as to the intention of the parties. The evidence in the cause sufficiently shows an engagement terminable at the option of the respondent. The libellant was not by profession a pilot, and he leaves it at least equivocal upon his own evidence whether he had ever before acted in that capacity. He had for many years been master of sailing vessels and steamboats employed on the Hudson river and elsewhere, having passed three or four years of the intermediate time in keeping a public house, established near the Highlands. But even his character as captain in vessels of the description mentioned, would not import any ability or experience as pilot. The evidence shows that masters of steamboats are not charged with the duty of navigating them. And although upon the Hudson river, such duties are performed by masters of steamboats occasionally, and frequently by masters of sailing vessels, yet in neither case does the mere holding the place of master import any nautical skill or experience.

It is clear, from the testimony of Mr. Van Buren, the pilot of the Oswego, and who was examined on behalf of the libellant, that the respondent did not consider the libellant qualified to fill the place of second pilot at the time he was engaged and taken on board the steamer. Placing him in that position, under such circumstances, raises the presumption that he was taken temporarily or upon trial, to determine his capacity for the station, rather than absolutely assigned to the post of second pilot for the residue of the season.

The declarations of the libellant, made after he entered upon this service, to the witnesses King and Whittemore, confirm the inference that a temporary engagement only was contemplated by the respondent; and they show, also, that the libellant did not consider himself committed to any definite period of service. To King, he stated in June that he was making interest for a different employment in New York, and did not intend remaining with the Oswego longer than until he could get a better situation. This declaration was made on board the boat, and the libellant added that others besides himself were looking out for such a situation for him, importing that it was understood he was attached to the boat but temporarily.

To Whittemore, he stated early in August, and on board the boat, that he expected to leave her, and advised him to go down in her from Albany to New York, and obtain the berth which he occupied. He alluded to the office of harbor-master as one which he and others expected would be obtained for him. The witness does not recollect whether the libellant specified the time at which he intended to leave the boat. But after that conversation the respondent wrote him at Albany, desiring to employ him as second pilot; and the witness, in compliance with that request, came from Albany in the boat, on the first of September, in that capacity. The libellant was then on board, and came to New York, but made no remark to witness relative to the latter having displaced him. Neither pilot exacted any services of the libellant during the trip, nor is it shown that the respondent put him to any duty, though the first pilot says, once on the trip he saw the libellant rendering some assistance on the deck.

I think, upon the whole evidence, it is manifest that the libellant well understood he was engaged only provisionally, and was at liberty to leave the boat whenever he chose to do so. There must be strong and clear proof that the respondent bound himself absolutely to more than was secured in his own behalf against the libellant. In the absence of such proof, the presumption will be that the contract was reciprocal in respect to the right of each party to hold the other for a definite term, as also to the right of each to terminate it at his option.

So far from showing an obligation upon the respondent to retain the libellant in the service of the boat during the entire season, I think all the testimony tends to prove a mutual understanding that the libellant was engaged for so long a time only as the respondent should see fit to employ him, with a correspondent right on his part to seek other service, and leave the boat at his pleasure.

It ought, probably, to be added, that, in my opinion, the evidence fairly imports that the engagement was terminated by the libellant himself, as it is no more than reasonable to infer that he gave the respondent notice of the communication made by him to Whittemore, in August. The libel must accordingly be dismissed with costs.